UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
NESHGOLD LP, d/b/a JFK Plaza Hotel,                         :
                                                            :
                                      Petitioner,          :        13 Civ. 2399 (KPF)
                                                            :
                      v.                                    :        OPINION AND ORDER
                                                            :
THE NEW YORK HOTEL & MOTEL TRADES                          :
COUNCIL, AFL-CIO,                                           :
                                                            :
                                      Respondent.          :
                                                            :
------------------------------------------------------------ X

KATHERINE POLK FAILLA, District Judge:

        Pending before the Court are competing motions to vacate (Dkt. #27),

and to confirm (Dkt. #21), two labor arbitration awards.  For the reasons set

forth in the remainder of this Opinion, Petitioner's motion to vacate is denied

and Respondent's motion to confirm is granted.

                              **FACTUAL BACKGROUND**[1]

**A.      Petitioner's Acquisition of the Hotel**

        Petitioner Neshgold LP, d/b/a JFK Plaza Hotel ("Petitioner" or

"Neshgold"), is the operator of a hotel located at 151-20 Baisley Boulevard,

Jamaica, New York, 11434 (the "Hotel").  (Petition to Vacate at ¶ 2).  The Hotel,

under different management, entered Chapter 11 bankruptcy at the end of

---

[1]     The facts are drawn from Petitioner's Amended Petition to Vacate Two Arbitration
        Awards (the "Petition to Vacate") (Dkt. #15); its Memorandum of Law in Support of the
        Motion to Vacate ("Pet. Br.") (Dkt. #27); Respondent's Memorandum of Law in Support
        of the Motion to Confirm Two Arbitration Awards ("Resp. Br.") (Dkt. #22); exhibits
        attached to the Petition to Vacate ("Exhs."); Arbitration Award #2012-66 (the "Liability
        Award," included as Exhibit A to Respondent's Amended Answer (Dkt. #13)); and
        Arbitration Award #2013-18 (the "Relief Award," included as Exhibit B to Respondent's
        Amended Answer).

2010, in the course of which a court-appointed trustee assumed operations. (Liability Award at 10).  Petitioner received approval from the bankruptcy court to acquire the Hotel in March 2011.  (*Id.*).

Respondent New York Hotel & Motel Trades Council, AFL-CIO ("Respondent" or "Union"), is a labor organization that represents the Hotel's employees.  (Petition to Vacate at ¶ 3).  Respondent had longstanding labor disputes with the Hotel's prior management, and agreed to support Petitioner Neshgold's acquisition of the Hotel subject to an agreement to resolve these outstanding disputes.  (Liability Award at 10).

On March 28, 2011, the parties entered into a Memorandum of Agreement (the "MOA") outlining the concessions made by both sides to enable Petitioner to resume normal hotel operations.  (Petition to Vacate at ¶ 6).  As pertinent to the instant litigation, Petitioner agreed in the MOA to be bound by the Industry Wide Agreement (the "IWA"), the collective bargaining agreement that had been in place prior to Petitioner's acquisition of the Hotel.  (*Id.* ¶ 7; MOA at ¶ 1).[2]  Among other things, the IWA required binding arbitration of "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this agreement, or any acts, conducts, or relations between the parties, directly or indirectly," to be conducted before the Office of the Impartial Chairperson, a standing arbitration entity.  (IWA at 20).

---

[2]     The IWA is included as Exhibit D to Respondent's Amended Answer.

Specific provisions in the MOA addressed Petitioner's expressed intention of closing the Hotel for renovations.  The parties agreed, for instance, that "the Hotel may close for renovations necessary to attain a chain flag[3] for a period not to exceed four (4) months," and that "the [wage rate provided for elsewhere in the MOA would] be tolled for the shorter of the renovation period an employee is not actually working or three months."  (Exh. A at ¶ 4).  The MOA also provided that, "[o]ther than for accrued benefits ... no wages nor Funds contributions are due for hours not worked by an Employee during the above renovation period."  (*Id.*; *see also* Petition to Vacate at ¶ 9).  Presumably in exchange for these Union concessions, Petitioner agreed elsewhere in the MOA that "[f]or its initial workforce, [Petitioner would] offer employment ... to all Employees represented by [Respondent] ... by seniority, for which the Hotel will have positions upon or after acquisition by Neshgold."  (Exh. A at ¶ 3).

The Hotel closed for renovations on March 31, 2011.  (Liability Award at 11).  The ensuing renovations period proved challenging, due both to the disrepair of the property — including numerous active building violations — and multiple water-damage events.  (Petition to Vacate at ¶¶ 11-12, 16-22).  The Hotel did not resume operations until March 22, 2012, almost a year after its initial closure.  (*Id.* at ¶ 23).

## B.    The Arbitration

Respondent Union initiated an arbitration pursuant to the IWA in November 2011 (Petition to Vacate at ¶ 24), complaining that Petitioner had:

---

[3]      The arbitrator noted in the Liability Award that a "chain flag" refers to "a license from one of the major hotel groups."  (Liability Award at 25).

(i) failed to reopen at the end of the four-month renovation period; (ii) failed to comply with the MOA recall procedures upon eventual reopening; and (iii) failed to make appropriate severance and benefits payments. (*Id.* at ¶¶ 24-25; Liability Award at 12-19).

Petitioner argued in response that MOA paragraph 4 would only have compelled reopening within four months had the Hotel closed to obtain a chain flag. The Hotel's closure was not designed to acquire a chain flag, Petitioner maintained, but only to restore the Hotel to service condition. As such, the reopening provision never came into effect. In the alternative, Petitioner argued that, irrespective of the effect of the reopening provision, the intervening water-damage events had made it legally impossible for the Hotel to reopen in that period. (Petition to Vacate at ¶ 27; Liability Award at 19-24).

The arbitrator held a liability hearing on October 22, 2012, and issued the Liability Award on December 18, 2012, holding for Respondent. In the Liability Award, the arbitrator concluded that "the purpose of the closing was to make renovations needed to obtain a chain flag and that, by the express terms of the MOA, the Hotel was obliged to reopen within four months from the date it closed for renovation." (Liability Award at 25). The arbitrator also rejected Petitioner's impossibility defense. (*Id.* at 25-26). Finally, the arbitrator agreed that Petitioner had failed to recall former employees in accordance with the MOA. (*Id.* at 26).

On February 14, 2013, the arbitrator conducted a hearing to determine damages. (Relief Award at 2). Respondent calculated damages by observing

that Petitioner employed 17 individuals on its eventual reopening.  With respect to its failure to reopen claim, Respondent sought back wages and benefit payments equal to the amount Petitioner would have paid had it reopened on schedule at the same staffing level.  (Petition to Vacate at ¶ 36).   With respect to its failure to recall claim, Respondent sought back wages and benefit payments equal to the payments actually made to those individuals who were employed by Petitioner after the Hotel reopened on March 21, 2012, but who were not recalled in accordance with the MOA.  (Relief Award at 6; *see also* Petition to Vacate at ¶ 34).  Respondent also sought appropriate severance payments for any employee who did not accept a recall offer (Relief Award at 4-7; Petition to Vacate at ¶ 33), and an additional 15% surcharge for Petitioner's allegedly willful violation of the MOA (Relief Award at 6-7).

Petitioner argued that Respondent's failure to identify specific employees who should have been recalled deprived the recall damages of the requisite evidentiary foundation.  (Relief Award at 8-9).  With respect to damages for failure to reopen, Petitioner submitted that any award would be impermissibly speculative; the Hotel's disrepair prevented Petitioner from employing anyone at all before the Hotel eventually reopened.  (*Id.* at 10-11).

The arbitrator issued the Relief Award on March 28, 2013, accepting Respondent's calculations for both categories of damages with minor modifications and ordering severance payments, but rejecting the 15% willfulness surcharge.  (Relief Award at 14-17).  The arbitrator awarded total damages of $1,382.254.24.  (Resp. Br. at 6).

C.     **The Instant Litigation**

Petitioner filed a petition on March 26, 2013, in the New York State Supreme Court for New York County, seeking to vacate the Liability Award. Respondent timely removed the state action to this Court on April 10, 2013 (Dkt. #1), and filed on May 2, 2013, an answer as well as counterclaims seeking confirmation of both arbitration awards (Dkt. #7). On May 22, 2013, Petitioner answered these counterclaims. (Dkt. #10). Petitioner filed an amended petition seeking vacatur of both awards on May 23, 2013. (Dkt. #15). Respondent answered on May 28, 2013, again pressing counterclaims seeking confirmation of both arbitration awards. (Dkt. #13). Petitioner answered these counterclaims on June 3, 2013. (Dkt. #16).

The parties filed the pending motions for vacatur (Dkt. #27) and confirmation (Dkt. #21) on June 17, 2013.

## DISCUSSION

A.     **Applicable Law**

1.     **Judicial Review of Arbitration Awards**

Federal law provides for vacatur of arbitration awards "only in very unusual circumstances." *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 942 (1995). [4] As the United States Supreme Court recently held, "[b]ecause the

---

[4]     The parties' submissions are not clear regarding what body of law each believes should apply. Petitioner's opening brief relies almost exclusively on New York State law for authority to vacate arbitration awards. (Pet. Br. at 7). Respondent contends that federal law should control under § 301 of the Labor Management Relations Act, Pub. L. 80-101, 61 Stat. 136, *codified at* 29 U.S.C. §§ 141 *et seq.* (the "LMRA"), but notes that New York law also supports confirmation. (Resp. Br. at 3 n.2).

parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC* v. *Sutter*, 133 S. Ct. 2064, 2068 (2013) (quoting *Eastern Assoc. Coal Corp.* v. *Mine Workers*, 531 U.S. 57, 62 (2000)). The Second Circuit underscores this point in holding that courts should exercise an "extremely deferential standard" when reviewing arbitration awards. *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

Deference to arbitrators is especially important in the labor context, as "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of Am.* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). Under the LMRA, an arbitrator's award arising from a collective bargaining agreement "is legitimate and enforceable as long as it 'draws its essence from the collective bargaining agreement' and is not merely an exercise of the arbitrator's 'own brand of industrial justice.'" *Int'l Bhd. of Elec. Workers, Local*

---

The outcome here would remain the same under state or federal law because, as set forth below, the arbitrator did not exceed his authority, violate public policy, or manifestly disregard the law. *See Tivo, Inc.* v. *Goldwasser*, No. 12 Civ. 7142 (LLS), 2013 WL 586856, at *2 n.1 (S.D.N.Y. Feb. 14, 2013). Nonetheless, the Court will apply federal law. Section 301 of the LMRA extends federal court subject-matter jurisdiction to all "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." 29 U.S.C. § 185(a). This jurisdiction includes actions to vacate or confirm arbitration awards under collective bargaining agreements. *See Burns Int'l Sec. Servs., Inc.* v. *Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995). The Supreme Court has held that Section 301 is "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 209 (1985) (citing *Textile Workers Union of Am.* v. *Lincoln Mills*, 353 U.S. 448 (1957)). Since the Court has jurisdiction here under the LMRA (*see* Petition to Vacate at ¶ 4), federal law should apply. *Lincoln Mills*, 353 U.S. at 456 (1957).

*97* v. *Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998) (quoting *Enterprise Wheel*, 363 U.S at 597). Even when an arbitrator has "committed serious error," the award should still be confirmed as long as the arbitrator was "even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987).

Though the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq.*, does not apply of its own force to "'contracts of employment of ... workers engaged in foreign or interstate commerce,'" courts have often consulted the FAA "for guidance in labor arbitration cases," especially given the grant of authority under the LMRA to "fashion rules of federal common law to govern" suits for violations of collective bargaining agreements. *Misco*, 484 U.S. at 40 n.9 (quoting 9 U.S.C. § 1). The FAA creates "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9-11). A court must grant a motion to confirm an arbitration award unless the award "is vacated, modified, or corrected" under § 10 or § 11. *Id.* There are four statutory grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient

8

> cause shown, or in refusing to hear evidence
> pertinent and material to the controversy; or of any
> other misbehavior by which the rights of any party
> have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and
> definite award upon the subject matter submitted
> was not made.

9 U.S.C. § 10(a).

According to the Supreme Court, the only question under § 10(a)(4) "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health*, 133 S. Ct. at 2068. The Second Circuit has similarly "'consistently accorded the narrowest of readings' to section 10(a)(4)." *Jock* v. *Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1742 (2012) (quoting *ReliaStar Life Ins. Co. of N.Y.* v. *EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009)).

## 2.   Questions of Arbitrability

The only categorical exception to the profound deference arbitrators usually enjoy from the courts is with respect to "questions of arbitrability." *Oxford Health*, 133 S. Ct. at 2068 n.2. These questions include "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp.* v. *Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion). Questions of arbitrability also include "who should have the primary power to decide" whether a given dispute is arbitrable under the arbitration clause at issue. *First Options of Chicago, Inc.* v. *Kaplan*,

514 U.S. 938, 942 (1995) (emphasis omitted).  Questions of arbitrability are "undeniably an issue for judicial determination." *AT & T Technologies, Inc.* v. *Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Courts should "apply ordinary state-law principles" of contract law to make this threshold determination of arbitrability and "should not assume that the parties agreed to arbitrate arbitrability" without clear and unmistakable evidence of intent to do so.  *First Options*, 514 U.S. at 944.  However, if the question is "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement ... the law reverses the presumption." *Id.* at 944-45 (emphasis in original) (internal quotation marks omitted).  When one party to an agreement containing an admittedly valid arbitration clause contends that a specific issue falls outside an arbitrator's authority under that clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'" *AT & T Technologies*, 475 U.S. at 650 (quoting *United Steelworkers of Am.* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).  Especially when dealing with broad arbitration clauses, "'[i]n the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* (alteration in original).

**B.     Application**

Petitioner seeks vacatur of both arbitration awards: the Liability Award because the arbitrator exceeded his authority and issued an award that violated public policy; and the Relief Award because the arbitrator manifestly disregarded the law by awarding speculative damages and by failing to calculate lost wages with reasonable certainty.  None of these arguments can prevail in the face of the Court's duty to confirm arbitration awards in all but the narrowest circumstances.

**1.     Confirming the Liability Award**

**i.     The Arbitrator Did Not Exceed His Authority**

Petitioner advances two distinct arguments that the arbitrator exceeded his authority in finding liability for failure to reopen the Hotel.  Neither succeeds.  First, Petitioner argues that the MOA clause at issue, providing that "the Hotel may close for renovations necessary to attain a chain flag for a period not to exceed four (4) months" (Exh. A at ¶ 4), did not apply to the Hotel's closure at all.  Petitioner maintains that paragraph 4 never had effect because "the Hotel never closed to make repairs to obtain a chain flag," and that "the record is devoid of any evidence that a single repair was done at the Hotel" in pursuit of a chain flag.  (Pet. Br. at 9).  From this, Petitioner reasons that only by relying on his "personal opinion and facts that were never presented and not subject to any type of cross examination" was the arbitrator able to conclude that the Hotel's closure was designed to receive a chain flag. (*Id.* at 9-10).  By basing the Liability Award on a body of thought outside the

agreement itself, Petitioner concludes, the arbitrator failed to draw the award from the essence of the agreement and exceeded his authority.  (*Id.* at 10).

Petitioner's arguments impermissibly attack the arbitrator's reasoning, not the scope of his authority.  Instructed by § 10(a)(4) of the FAA, a court must focus on whether the arbitrator "had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  *DiRussa* v. *Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997).  The court may find that an arbitrator exceeded his authority when it is "'clear that the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference).'" *Pathmark Stores, Inc.* v. *Local 1199, Nat'l Health and Human Serv. Emp. Union, SEIU, AFL-CIO*, No. 98 Civ. 5230 (DLC), 1999 WL 20896, at *2 (S.D.N.Y. Jan. 19, 1999) (quoting *Harry Hoffman Printing, Inc.* v. *Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 98 (2d Cir. 1991)) (emphasis in *Harry Hoffman*).  Significantly, however, an arbitrator may rely on more than the bare terms of a collective bargaining agreement to enforce it: he or she may "properly consider, for example ... industry custom and practice."  *Id.*

Thus, the arbitrator was free to acknowledge, and to rely on, industry practice as context for his construction of the MOA and the Court cannot vacate the award on that basis.  Here, however, the arbitrator did not rely solely on his experience, but rather explicitly identified and relied on evidence in the record supporting his conclusion, including Petitioner's May 9, 2011

letter to the Union and Petitioner's own timeline, which identified the end of the four-month renovation period as the date on which the MOA "call[ed] for the Hotel to reopen." (Liability Award at 25). The award both evinces "colorable justification" for its conclusion, *Jock*, 646 F.3d at 124, and "draws its essence from" the MOA, *Niagara Mohawk*, 143 F.3d at 714 (quoting *Enterprise Wheel*, 363 U.S. at 597).

Petitioner, in its reply brief, makes a different argument. (*See* Dkt. #40 ("Pet. Reply Br.")).[5] Here, Petitioner argues that neither the MOA nor the IWA contains any provision requiring the Hotel to reopen at any specific time. (Pet. Reply Br. at 5-7). Absent some indication of a contractual "set reopening date," Petitioner contends that the parties only agreed that employees had a right to be recalled when the Hotel eventually reopened, and not a "right to wages and benefits" during the Hotel's closure, which Petitioner claims the arbitrator "impl[ied]" out of the IWA. (*Id.* at 5-6). That is, as the agreements are silent with respect to failure to reopen, the parties did not agree to arbitrate such claims, and the arbitrator exceeded his authority by imposing an award governing issues not properly before him. (*Id.* at 7).

This alternative argument questions the arbitrability of the Hotel's failure to reopen. Unlike the merits of the Awards themselves, the merits of the arbitrability issue are properly before this Court.[6] The result, however, is the

---

[5]     A version of this second argument is also set out in pages 5 though 7 of Petitioner's Memorandum of Law in Opposition to Respondent's Motion to Confirm Two Labor Arbitration Awards. (Dkt. #35).

[6]     The January 26, 2012 Memorandum of Understanding modifying and extending the IWA expressly accords arbitrators authority over "questions regarding arbitrability,

same.  Whether a given dispute is arbitrable, especially when a broad arbitration agreement is implicated, is subject to the reverse presumption set out in *AT & T Technologies* and *First Options*: "'Doubts should be resolved in favor of coverage' ... [and] 'only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT & T Technologies*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582-85).  No such evidence exists. The IWA provides that "[a]ll complaints, disputes or grievances arising between the parties hereto involving ... any acts, conduct or relations between the parties" are subject to binding arbitration.  (IWA at 20).  As Respondent points out (*see* Resp. Br. at 10) — and Petitioner does not contest — the Second Circuit construed this very arbitration clause to be all-encompassing: "[n]o grievance — either specific or general — is excluded from [the IWA's] broad coverage."  *Pitta* v. *Hotel Ass'n of New York City, Inc.*, 806 F.2d 419, 422 (2d Cir. 1986).

Petitioner's arguments to the contrary are, on closer examination, merely additional assaults on the arbitrator's reasoning.  Petitioner argues, for example, that (i) neither the MOA nor the IWA require the Hotel to reopen by a specific date, impose a penalty for failure to do so, or create a right to pre-opening employment; (ii) during the Hotel's closure, Petitioner had no positions for Union members and so could not legally have paid any employees; and (iii) paragraph 3 of the MOA requires Petitioner to follow Union recall

---

substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority."  (IWA at 35).  This provision was not operative at the time of these events, however, and so sheds no light on the question of arbitrability Petitioner presents.

procedures for employees "for which the Hotel will have positions," implying that such positions would only exist when the Hotel reopened.  (Pet. Reply Br. at 5-11).  Yet none of these claims, even if true, would provide the "most forceful evidence" necessary to overcome the presumption of arbitrability under the broad arbitration clause.

Petitioner offers no plausible reading of the IWA's expansive language that explains why it should not cover a dispute over whether, and when, the Hotel should have hired Union employees.  Given the breadth of the IWA arbitration clause and the absence of evidence to the contrary, the Court must conclude that the dispute over the Hotel's failure to reopen was arbitrable. *See, e.g.*, *New York Hotel & Motel Trades Council, AFL-CIO* v. *Alphonse Hotel Corp.*, No. 01 Civ. 0712 (RCC), 2001 WL 959005, at *3-4 (S.D.N.Y. Aug. 21, 2001) (interpreting the "broad" IWA arbitration clause to require arbitration of disputes involving any "relations between the parties").

As this dispute was properly submitted to the arbitrator, his determination must be confirmed unless he failed to offer "'a barely colorable justification for the outcome reached.'"  *Jock*, 646 F.3d at 122 (quoting *ReliaStar*, 564 F.3d at 86).  And the Court has already concluded that the arbitrator found more than sufficient support for his conclusion that the MOA bound the Hotel to reopen at an appointed time.  The Court may not consider the correctness of the arbitrator's decision that Petitioner is liable for failure to reopen, only whether that decision "even arguably" construes or applies the underlying agreements.  It plainly does.

15

Petitioner apparently does not contest Respondent's motion to confirm the arbitrator's conclusion that Petitioner is liable for failure to recall.  Courts in the Second Circuit treat an unopposed petition for confirmation of an arbitration award "as akin to a motion for summary judgment based on the movant's submissions," and the court "'may not grant the motion without first examining the moving party's submission to determine'" that it satisfactorily demonstrates the absence of material issues of fact.  *D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006) (quoting *Vermont Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).  In the context of petitions to confirm arbitration awards, that burden "is not an onerous one," so long as the court can find a "'barely colorable justification'" for the arbitrator's conclusion.  *New York City Dist. Council of Carpenters Pension Fund* v. *Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *1 (S.D.N.Y. Feb. 3, 2009) (quoting *Landy Michaels Realty Corp.* v. *Local 32B-32J, Serv. Emp. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)).  The arbitrator here construed MOA paragraph 3 as providing a "very clear obligation" for Petitioner to offer employment to individuals who had worked at the Hotel before Petitioner acquired it, and interpreted the documentary evidence to show that Petitioner had failed to satisfy that obligation.  (Liability Award at 26).  The arbitrator's decision imposing liability on Petitioner for failure to recall more than satisfies the minimal standard for confirmation.

### ii.   The Liability Award Does Not Violate Public Policy

Petitioner submits that the Liability Award should be vacated as violative of public policy.  Because the arbitrator merely awarded damages for contractual breach without compelling action that might conflict with a public policy, this argument is also unavailing.

Courts may vacate an arbitration award on the grounds that it "is contrary to public policy."  *W.R. Grace and Co.* v. *Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983).  The public policy in question must "be well defined and dominant," as determined by reference to statutory and decisional law.  *Id.*  The Supreme Court has elsewhere cautioned that this analysis must focus only on whether the award 'created any explicit conflict with other 'laws and legal precedents'" — that is, whether the award itself, if put into effect, "would actually violate" a specific, dominant public policy.  *Misco*, 484 U.S. at 43-44 (quoting *W.R. Grace*, 461 U.S. at 766).  The Second Circuit has likewise emphasized that the public policy exception must focus on "result, as opposed to the arbitrator's reasoning," and may only be invoked in the face of an explicit, not a speculative, conflict.  *Niagara Mohawk*, 143 F.3d at 716.

Petitioner argues that the Liability Award violated the policy enshrined in the New York City Building Code and the New York State Public Health Law. Stated summarily, the argument is that the Hotel at its acquisition was so derelict that had Petitioner opened it, as the arbitrator construed the MOA to require, the health of the public would have been imperiled.  (Pet. Br. at 10-11).

17

Fatal to Petitioner's argument, however, is the fact that the Liability Award does not order any action that might run afoul of public policy.  The arbitrator did not — as might have made Petitioner's argument colorable — order the Hotel to reopen before coming into compliance with building and health regulations.  The arbitrator ruled only that Petitioner faced liability for breaching its agreement with Respondent.  The result of the Liability Award does not violate any identifiable public policy, and this challenge is correspondingly futile.  *See, e.g., Beth Israel Med. Ctr.* v. *1199/S.E.I.U. United Healthcare Workers E.*, 530 F. Supp. 2d 610, 616 (S.D.N.Y. 2008) (rejecting a public policy challenge when "nothing about the arbitration award itself" violated an identifiable public policy).

### 2.    Confirming the Relief Award

Petitioner urges the Court to vacate the Relief Award on the grounds that the arbitrator manifestly disregarded controlling legal rules.  (Pet. Br. at 10-13). This argument is equally futile for the simple reason that the arbitrator explicitly acknowledged and applied the principles Petitioner identifies.

As "'judicial gloss'" on the "'specific grounds for vacatur'" provided in the statute, the Second Circuit has held that a court "may set aside an arbitration award if it was rendered in 'manifest disregard of the law.'"  *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (quoting *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010)).[7]  The manifest

---

[7]    The "manifest disregard" standard, first announced in *Wilko* v. *Swan*, 346 U.S. 427, 436-37 (1953), was later called into question in *Hall Street*, 552 U.S. at 585 ("Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them.").

disregard exception, much narrower than "'mere error in the law or failure … to understand or apply the law,'" requires courts to "consider, first, 'whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,' and, second, whether the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" *Jock*, 646 F.3d at 121 n.1 (quoting *Westerbeke Corp.* v. *Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208-09 (2d Cir. 2002)). In short, the manifest disregard standard requires confirmation of an arbitration award "if there is a 'barely colorable justification for the outcome reached.'" *Banco de Seguros del Estado* v. *Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (quoting *Landy Michaels*, 954 F.2d at 797).

The arbitrator ordered Petitioner to pay three distinct forms of relief: back wages and benefit payments for Petitioner's failure to reopen the Hotel; back wages and benefit payments for Petitioner's failure properly to recall employees after reopening; and severance payments to employees who declined recall offers. Petitioner raises distinct manifest-disregard arguments with respect to the first two categories of damages. Failure to reopen damages should be vacated, Petitioner submits, because the arbitrator ignored the legal principle that lost wages must be calculated with "reasonable certainty." (Pet. Br. at 12 (quoting *Wang* v. *Yum! Brands, Inc.*, No. 05 Civ. 1783 (JFB) (MDG), 2007 WL 1521496, at *5 (E.D.N.Y. May 22, 2007)). Failure to recall damages

---

However, after the Supreme Court expressly declined to consider the vitality of the manifest disregard standard in *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010), the Second Circuit has "continued to recognize that standard as a valid ground" for vacatur of an arbitration award. *Schwartz*, 665 F.3d at 452.

should be vacated based on the arbitrator's neglect of the rule that damages cannot be based on speculation. (Pet. Br. at 13 (citing *Kenford Co., Inc.* v. *Erie Cnty*, 108 A.D.2d 132, 135-36 (1985), *aff'd*, 67 N.Y.2d 257 (1986), *rev'd on other grounds sub nom. Kenford Co., Inc.* v. *Cnty. of Erie*, 73 N.Y.2d 312 (1989))). Neither of these contentions is correct.

The arbitrator was well aware not just of the legal principles Petitioner identifies, but even of Petitioner's precise argument regarding their application. After all, the manifest disregard section of Petitioner's brief here is drawn almost word-for-word from its brief on damages to the arbitrator. (*Compare* Pet. Br. at 11-14 *with* Relief Award at 8-11). But Petitioner cannot meet the "very stringent burden" with respect to either of its manifest-disregard claims because the arbitrator did not "refuse[] to apply" or "ignore" the principles of law Petitioner identifies. *Greenberg* v. *Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir. 2000). On the contrary, obedient to his understanding of what he termed these "essentially irrefutable" rules (Relief Award at 13), the arbitrator relied on Petitioner's "actual staffing level" to craft an award that he judged to be "anything but hypothetical and speculative" (*id.* at 15). The Court may not vacate the award simply because the arbitrator did not ratify Petitioner's favored legal interpretation.

Petitioner apparently does not contest the arbitrator's award of severance damages. Respondent's unopposed motion for confirmation thus is again evaluated "as akin to a motion for summary judgment," *D.H. Blair*, 462 F.3d at 109, and will be granted if the Court can find a "'barely colorable justification'"

for the arbitrator's conclusion, *Angel Const. Grp.*, 2009 WL 256009, at *1 (quoting *Landy Michaels*, 954 F.2d at 797).  The arbitrator concluded that Petitioner had an "obligation to pay severance pay" that was memorialized in the MOA. The MOA indeed provides that employees whom Petitioner did not rehire, for whatever reason, "will receive severance."  (Exh. A at ¶ 3).  The arbitrator's severance damages award has adequate justification.

## CONCLUSION

Petitioner's motion to vacate the arbitration awards is DENIED. Respondent's motion to confirm the arbitration awards is GRANTED.  The arbitral award is confirmed.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:      September 18, 2013
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge